1
2
3
4
5
6
7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

8
9
10
11
12
13
14
15

| | |
|---|---|
| Frederick Leroy Borden, III and Ashley Borden,<br><br>                    Plaintiffs,<br><br>v.<br><br>Hartford Life and Accident Insurance Company,<br><br>                    Defendant. | No. CV-15-00687-PHX-DJH<br><br>**ORDER** |

16
17
18
19
20
21
22
23
24
25
26

       This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 130) and Separate Statement of Facts (Doc. 131).  Plaintiffs have filed a Response to Defendant's Motion for Summary Judgment (Doc. 135) and a Combined Controverting and Supplemental Statement of Facts in Opposition to Defendant's Motion for Summary Judgment (Doc. 136).  Defendant has filed a Reply (Doc. 152).  The Court has also considered Defendant's Notice of Supplemental Authority (Doc. 156); Plaintiffs' Response to Defendant's Notice of Supplemental Authority and Motion to File Supplemental Brief (Doc. 157); Plaintiffs' Notice of Supplemental Authority (Doc. 158); Defendant's Response to Plaintiff's Notice of Supplemental Authority (Doc. 159); and Plaintiffs' Reply to Defendant's Response to Plaintiffs' Notice of Supplemental Authority (Doc. 160).

27       . . . .

28       . . . .

1

**A. Background[1]**

2       Plaintiffs initiated this action by filing a Complaint on April 16, 2015.  (Doc. 1).

3 Based on the facts alleged in the Complaint, Plaintiffs have presented claims for breach

4 of contract, breach of the obligation of good faith and fair dealing, and loss of

5 consortium.  (Doc. 1 at 7-10).  Among their requests for relief, Plaintiffs seek punitive

6 damages, and "future damages based on the value of benefits that would be received

7 throughout Plaintiff's life pursuant to contract as damages for Defendant's tortious

8 breach of the obligation of good faith and fair dealing."  (Doc. 1 at 11).

9       Plaintiff Frederick Borden ("Plaintiff" or "Mr. Borden") worked as a correctional

10 officer for the State of Arizona and is insured under a group long-term disability policy

11 issued by Defendant Hartford to his employer.  (Defendant's Separate Statement of Facts

12 ("DSOF") at ¶¶ 1, 5; Plaintiffs' Combined Controverting and Supplemental Statement of

13 Facts ("PCSOF") at ¶¶ 1, 5).  Plaintiff stopped working on December 23, 2009, shortly

14 after his 27th birthday, and submitted a claim for disability benefits based on complaints

15 of back pain and an upcoming lumbar surgery.  (DSOF at ¶ 6; PCSOF at ¶ 6).  Defendant

16 approved Plaintiff's claim and paid him monthly benefits beginning on June 24, 2010,

17 following a 180-day "elimination period" under the policy.  (DSOF at ¶¶ 2, 7; PCSOF at

18 ¶¶ 2, 7).  Plaintiff had laser surgery on his back in April 2010.  (DSOF at ¶ 8; PCSOF at ¶

19 8).  Plaintiff also had vertebrae fusion surgery in May 2011.  (DSOF at ¶ 10; PCSOF at ¶

20 10).  In December 2011, Plaintiff reported falling on the stairs leading to his apartment,

21 which set back his recovery.  (DSOF at ¶ 13; PCSOF at ¶ 13).

22       Under the policy, as of June 2012, Plaintiff would continue to be eligible for

23 benefits only if he was disabled from any occupation, as opposed to his own occupation.

24 (DSOF at ¶ 14; PCSOF at ¶ 14).  After benefits are paid for more than 24 months, the

25 policy's "Any Occupation" definition of disability becomes applicable.  (DSOF at ¶ 29;

26 PCSOF at ¶ 29).  As a result, Defendant conducted a "test change" review in 2012.  (*Id.*).

27

28      [1] The facts set forth in the background section are undisputed unless otherwise indicated.

- 2 -

1    Following the review, Defendant continued to pay Plaintiff benefits under the policy.
2    (DSOF at ¶ 17; PCSOF at ¶ 17).

3        In early 2014, Defendant requested updated medical records to assess Plaintiff's
4    condition and potential recovery.  (DSOF at ¶ 21; PCSOF at ¶ 21).  In May 2014, Rachel
5    Hanson, a Physician's Assistant at Dr. Finley's (Plaintiff's general practitioner) office,
6    completed and returned the Attending Physician Statement ("APS") Defendant had sent
7    to Dr. Finley as part of its ongoing investigation.  (DSOF at ¶ 24; PCSOF at ¶ 24).  After
8    examining Plaintiff, Ms. Hanson wrote in the APS that Plaintiff could sit for 1.5 hours at
9    a time for up to 3-4 hours per day, stand for a half hour at a time for 2-3 hours per day,
10   and walk for half an hour at a time for up to 2 hours per day.  (DSOF at ¶ 26).  Plaintiff
11   disputes this fact as incomplete and misleading, stating that other notations in the APS
12   continued to show Plaintiff was unable to work, including that his progress was
13   unchanged, that he had lifetime restrictions on his ability to work, and that he was not
14   expected to return to work.  (PCSOF at ¶ 26).

15       Using Ms. Hanson's APS, a Vocational Rehabilitation Clinical Case Manager
16   ("VRCM") employed by Defendant performed an employability analysis.  (DSOF at ¶
17   28; PCSOF at ¶ 28).  Defendant asserts that the employability analysis showed there were
18   a number of occupations Plaintiff could perform given his physical capabilities, including
19   expediter clerk, service order expediter, return-to-factory clerk, and ticket scheduler.
20   (DSOF at ¶¶ 30, 31).  Plaintiff disputes this assertion as incomplete and misleading
21   because the VRCM had no specific knowledge of the actual demands of the identified
22   jobs and knew that the jobs were last updated in the Dictionary of Occupational Titles in
23   1991.  (PCSOF at ¶¶ 30, 31).  Defendant then terminated Plaintiff's benefits in a letter
24   dated June 17, 2014.  (DSOF at ¶ 32; PCSOF at ¶ 32).

25       Plaintiff retained counsel in September 2014.  (DSOF at ¶ 40; PCSOF at ¶ 40).
26   Through counsel, Plaintiff filed an appeal of the termination of his benefits on December
27   1, 2014, which Defendant received on December 5, 2014.  (DSOF at ¶¶ 42, 43; PCSOF at
28   ¶¶ 42, 43).  In the appeal packet, Plaintiff's counsel included a functional capacity

1  evaluation he underwent on November 8, 2014 indicating Plaintiff had less than

2  sedentary functional capacity, and a letter from Dr. Finley explaining why she supported

3  his claim for disability.  (DSOF at ¶¶ 45, 46; PCSOF at ¶¶ 45, 46).  On December 30,

4  2014, Defendant sent Plaintiff's attorney a letter informing him that the denial had been

5  reversed on appeal.  (DSOF at ¶ 47; PCSOF at ¶ 47).  Soon thereafter, Defendant paid

6  Plaintiff his retroactive benefits.  (DSOF at ¶ 48; PCSOF at ¶ 48).  Plaintiff continues to

7  receive monthly long-term disability benefits under the policy.  ((DSOF at ¶ 49; PCSOF

8  at ¶ 49).

9       Defendant argues it is entitled to summary judgment on Plaintiffs' breach of

10  contract claim because Plaintiffs cannot establish the contract was breached or that there

11  are any resulting damages.  Defendant also seeks summary judgment on the bad faith

12  claim.  Defendant contends that Plaintiffs cannot show the absence of a reasonable basis

13  for its brief denial of benefits, nor can Plaintiffs show that Defendant knew or had a

14  reckless disregard of the lack of a reasonable basis for denying the claim for benefits.

15  Defendant further argues that Plaintiffs have not established a prima facie case for

16  punitive damages and that their claim for such damages "fails outright."  Finally,

17  Defendant argues that as a matter of law, Plaintiffs are not entitled to recover future

18  benefits.

19       In response, Plaintiffs argue that genuine issues of material fact preclude summary

20  judgment on their breach of contract and bad faith claims.  Regarding the contract claim,

21  Plaintiffs contend that despite having benefits reinstated after appeal and receiving past-

22  due benefits for the period when the benefits had been terminated, they are entitled to

23  interest on the delayed benefits.  Regarding the bad faith claim, Plaintiffs contend that

24  there are genuine issues of material fact as to whether Defendant lacked a reasonable

25  basis to terminate Mr. Borden's disability benefits and whether he was forced to jump

26  through unnecessary hoops to get his benefits reinstated.  Plaintiffs also argue they are

27  entitled to future benefits as a measure of their compensatory damages for the bad faith

28  claim.  Finally, Plaintiffs contend that genuine issues of fact preclude summary judgment

1    on their claim for punitive damages.  They argue that a jury could reasonably find that

2    Defendant's conduct rose to the level required for a punitive damages award.

3    **B.  Summary Judgment Legal Standards**

4           The Court must grant summary judgment "if the movant shows that there is no

5    genuine dispute as to any material fact and the movant is entitled to judgment as a matter

6    of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323

7    (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  The

8    materiality requirement means "[o]nly disputes over facts that might affect the outcome

9    of the suit under the governing law will properly preclude the entry of summary

10    judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Substantive law

11    determines which facts are material.  *Id.*  The dispute must also be genuine, meaning the

12    evidence is such that a reasonable jury could return a verdict for the nonmoving party."

13    *Id.*  The Court determines whether there is a genuine issue for trial but does not weigh the

14    evidence or determine the truth of matters asserted.  *Jesinger*, 24 F.3d at 1131.

15           The moving party bears the initial burden of identifying the portions of the record,

16    including pleadings, depositions, answers to interrogatories, admissions, and affidavits,

17    that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*

18    *Corp.*, 477 U.S. at 323.  If the moving party meets its initial burden, the opposing party

19    must establish the existence of a genuine dispute as to any material fact.  *See Matsushita*

20    *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986).  There is no issue

21    for trial unless there is sufficient evidence favoring the non-moving party. *Anderson*, 477

22    U.S. at 249.   "If the evidence is merely colorable or is not significantly probative,

23    summary judgment may be granted." *Id.* at 249-250.  However, the evidence of the non-

24    movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.*

25    at 255.

26    **C.  Discussion of Specific Claims**

27           **1.  Breach of Contract**

28           As Defendant asserts, to prevail on their breach of contract claim, Plaintiffs must

1   show the existence of a contract, a breach of that contract, and damages resulting from

2   the breach.  (Doc. 130 at 7-8) (citing *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d

3   656, 657 (1975)).  Defendant does not dispute the existence of a contract but argues that

4   Plaintiffs cannot establish Defendant breached the contract because Defendant's decision

5   to terminate Mr. Borden's benefits was correct based upon the information it had at the

6   time.  More importantly, Defendant argues that because Plaintiffs were made whole

7   under the policy when benefits were reinstated and retroactive benefits were paid,

8   Plaintiffs have suffered no damages resulting from the alleged breach.  The Court agrees.

9          Plaintiffs' one-paragraph response fails to demonstrate that this claim should go to

10   the jury.  Plaintiffs' only argument on the breach of contract claim addresses the damages

11   element.  Plaintiffs claim they are entitled to recover interest on the delayed benefits that

12   were paid after they prevailed on appeal.  Plaintiffs, however, cite no legal authority to

13   support their position and, as Defendant asserts in its reply, "[t]he contract itself does not

14   provide for interest on reinstated benefits."  (Doc. 135 at 8; Doc. 152 at 3).  The Court

15   finds that Defendant has met its burden to show it is entitled to summary judgment on

16   this claim and Plaintiffs have failed to demonstrate otherwise.  Summary judgment in

17   favor of Defendant will therefore be granted on the breach of contract claim.

18          **2. Insurance Bad Faith**

19          Defendant next argues that summary judgment on the bad faith claim is warranted

20   because Plaintiffs cannot establish the required elements of the claim.  An insurance bad

21   faith claim "arises when the insurer 'intentionally denies, fails to process or pay a claim

22   without a reasonable basis.'"  *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234,

23   237 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190 (1981)).

24   "Th[is] tort recognizes that 'in buying insurance[,] an insured usually does not seek to

25   realize a commercial advantage but, instead, seeks protection and security from economic

26   catastrophe.'"  *Jones v. Colorado Cas. Ins. Co.*, 2015 WL 1806726, at *4 (D.Ariz. April

27   21, 2015) (quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154 (1986)).

28          As the Arizona Supreme Court has observed, "[b]ecause of the disparity in

1    bargaining power and the nature of the contract, the insurer receives both premium and

2    control." *Rawlings*, 151 Ariz. at 154.  Thus, "[a]lthough the insured is not without

3    remedies if he disagrees with the insurer, the very invocation of those remedies detracts

4    significantly from the protection or security which was the object of the transaction." *Id*.

5    Consequently, "[a]n insurance contract is not an ordinary commercial bargain; implicit in

6    the contract and the relationship is the insurer's obligation to play fairly with its insured."

7    *Zilisch,* 196 Ariz. at 237 (internal quotation marks omitted).  As a result, "an insurer may

8    be liable for bad faith even if it has not breached an express covenant of the insurance

9    contract." *Jones*, 2015 WL 1806726, at * 4 (citing *Deese v. State Farm Mut. Auto. Ins.*

10   *Co.,* 172 Ariz. 504, 508 (1992)).  Therefore, "[t]he nature of the insurance relationship

11   under Arizona law requires insurers to give 'equal consideration' to the needs of their

12   insureds and not treat the claims process as a battlefield." *Demetrulias*, 917 F. Supp. 2d

13   at 1004 (quoting *Zilisch*, 196 Ariz. at 238).

14       "An insurance relationship carries some duties of a fiduciary nature."

15   *Demetrulias*, 917 F. Supp. 2d at 1004.  "Among them are '[e]qual consideration, fairness

16   and honesty.'"  *Id*. (quoting *Rawlings,* 151 Ariz. at 155).  "The insurer is obligated to

17   conduct a prompt and adequate investigation, to act reasonably in evaluating the insured's

18   claim, and to promptly pay a legitimate claim." *Temple*, 40 F. Supp. 3d at 1165 (citing

19   *Zilisch*, 196 Ariz. at 238).  Thus, "'[a]n insurer that intentionally and unreasonably denies

20   or delays payment breaches the covenant of good faith owed to its insured.'"

21   *Demetrulias*, 917 F. Supp. 2d at 1004 (quoting *Rawlings*, 151 Ariz. at 156).

22       There are two prongs to a bad faith claim under Arizona law -- an objective and a

23   subjective prong. *See Demetrulias*, 917 F. Supp. 2d at 1004.  The objective prong centers

24   upon reasonableness.  "The core of the duty of good faith and fair dealing is that the

25   insurer act *reasonably* towards its insured." *Deese*, 172 Ariz. at 508 (emphasis in

26   original) (citing cases).  "Unreasonable actions include failure to 'immediately conduct

27   an adequate investigation,' failure to 'act promptly in paying a legitimate claim,'

28   'forc[ing] an insured to go through needless adversarial hoops to achieve its rights under

1   the policy,' 'lowball[ing] claims,' and similar conduct." *Demetrulias*, 917 F. Supp. 2d at

2   1004 (quoting *Zilisch,* 196 Ariz. at 238). Additionally, "'groundless' or inadequately

3   investigated reasons for a position and delayed evaluations despite having all relevant

4   medical records are also generally considered signs of bad faith." *Bowman v. Country*

5   *Preferred Ins. Co.*, 2015 WL 1470086, at \*4 (D. Ariz. March 31, 2015) (citing *Lange v.*

6   *Penn Mut. Life Ins. Co.,* 843 F.2d 1175, 1182 (9th Cir.1988); *see Zilisch,* 196 Ariz. at

7   280–81; *see also Nardelli v. Metro Group Prop. & Cas. Ins. Co.,* 230 Ariz. 592, 599 (Ct.

8   App. 2012) (an insurer may not ignore conflicting evidence but must continually give

9   equal consideration to the available evidence shedding light on the claim)).

10      The second, subjective prong pertains to the insurer's intent. In 1986, the Arizona

11   Supreme Court explained:

12
13
14
15
16
> The 'intent' required here is an 'evil hand'—the intent to do the act. Mere negligence or inadvertence is not sufficient—the insurer must intend the act or omission and must form that intent without reasonable or fairly debatable grounds. But an 'evil mind' is not required; the insurer need not intend to harm the insured (an issue that arises with respect to the punitive damage question. . .). To be liable for tort damages, it need only to have intended its act or omission, lacking a founded belief that such conduct was permitted by the policy.

17   *Rawlings*, 151 Ariz. at 160. In turn, an insurer lacks a "founded belief," when it (1)

18   "knows that its position is groundless[,]" or (2) "when it fails to undertake an

19   investigation adequate to determine whether its position is tenable." *Id*. More recently,

20   in 2000, the Arizona Supreme Court described the subject element somewhat differently.

21   The insurer must "either [have] kn[o]w[n] or [have been] conscious of the fact that its

22   conduct was unreasonable." *Zilisch*, 196 Ariz. at 238 (citations omitted). According to

23   Division One of the Arizona Court of Appeals, "[t]his consciously unreasonable conduct

24   requirement is fulfilled either by the insurer's knowledge that it is acting improperly or

25   by reckless conduct which permits such knowledge to be imputed to it." *Trus Joist*, 153

26   Ariz. at 104.

27      This two-prong standard still allows an insurer to "challenge claims which are

28   fairly debatable[.]" *Noble*, 128 Ariz. at 189. At this point, "[t]he appropriate inquiry is

1    whether there is sufficient evidence from which reasonable jurors could conclude that in

2    the investigation, evaluation, and processing of the claim, the insurer acted unreasonably

3    and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch*,

4    196 Ariz. at 238 (citations omitted).  "'The prohibition against challenging a claim unless

5    it is fairly debatable merely expresses the obligation to give equal consideration to the

6    insured's interests.'" *Lange*, 843 F.2d at 1182 (quoting *Rawlings,* 151 Ariz. at 156) (other

7    citation omitted).  Stated another way, "[a]n insurance company's duty of good faith

8    means that 'an insurer must deal fairly with an insured, giving equal consideration *in all*

9    *matters* to the insured's interest.'"  *Deese*, 172 Ariz. at 507 (quoting *Tank v. State Farm*

10   *Fire & Casualty Co.*, 105 Wash.2d 381 (1986) (emphasis in original)).

11          After review of the record and the parties' arguments, the Court agrees with

12   Plaintiffs that genuine issues of material fact preclude summary judgment on this claim.

13   Plaintiffs first rely on the opinions of their bad faith expert to show that genuine issues of

14   fact exist on the question of whether Defendant violated its duty of good faith and fair

15   dealing.  In general, "summary judgment is inappropriate where an expert's testimony

16   supports the non-moving party's case."  *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir.

17   1996); *see also Walton v. U.S. Marshals Service*, 492, F.3d 998, 1008 (9th Cir. 2007)

18   (explaining that in the Ninth Circuit, "[e]xpert opinion is admissible and may defeat

19   summary judgment if it appears the affiant is competent to give an expert opinion and the

20   factual basis for the opinion is stated in the affidavit, even though the underlying factual

21   details and reasoning upon which the opinion is based are not.") (citations omitted);

22   *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1435 (9th Cir. 1995) (same).

23          Here, Plaintiffs provide a declaration from their insurance bad faith expert witness,

24   Mary E. Fuller, addressing her qualifications, the documents she reviewed, and the

25   reports she prepared.  (Doc. 136-11).  Attached to Ms. Fuller's declaration are the reports

26   she prepared for this case, her Curriculum Vitae, and a list of the documents sent to her

27   for review.  Ms. Fuller's opinions in this case, as reflected in her reports, are supported by

28   lengthy discussions of the factual circumstances.  For example, Ms. Fuller opines that

     Defendant violated its contractual obligations to Mr. Borden, and industry fair claims

1
2
3
4
5

standards, by basing its decision to terminate Mr. Borden's disability benefits "solely on the [APS] completed by Physician's Assistant Rachel Hansen." (Doc. 136-11 at 4). Ms. Fuller explained that this was a failure to objectively review all of the relevant medical records, many of which conflicted with the sitting, walking and standing estimates assessed by Ms. Hansen. (*Id.*).

6
7
8
9
10
11
12

Defendant, however, asserts that it based its decision to terminate Mr. Borden's benefits on multiple factors, not just the July 2014 APS completed by Ms. Hansen. (DSOF at ¶ 52). Thus, whether Defendant solely relied on the functional limitations in Ms. Hanson's APS in making the decision to deny Mr. Borden's benefits is a disputed issue of fact. That fact is clearly material to the question of whether Defendant acted unreasonably, and knew it was acting unreasonably, when it unexpectedly terminated Mr. Borden's benefits after it had been paying him for several years.

13
14
15
16
17
18
19
20
21
22
23
24

Ms. Fuller's conclusion that Defendant based its decision to deny benefits solely on Ms. Hansen's APS is sufficient to demonstrate a genuine issue of material fact and defeat summary judgment on this claim. Defendant does little to challenge the use of Plaintiff's expert's testimony as a basis to defeat summary judgment. Defendant merely argues that the expert affidavit does not automatically entitle Plaintiffs to a jury trial on the bad faith claim. (Doc. 152 at 13). Defendant further argues that Ms. Fuller's opinion is simply a list of mistakes she believes Defendant made but that such an opinion cannot create triable issues of fact if unsupported by the record. Here, however, as the Court explained, Ms. Fuller's declaration and attached reports are replete with references to supporting facts in the record. Accordingly, based on this and other genuine issues of material fact that the Court need not address, Defendant's motion for summary judgment on the bad faith claim will be denied.

### 3. Punitive Damages

25
26
27
28

Defendant next contends that summary judgment should be granted in its favor on Plaintiff's punitive damages claim. In an insurance bad faith case, punitive damages may not be awarded "unless the evidence reflects 'something more' than the conduct necessary to establish the tort. *Rawlings v. Apodaca*, 151 Ariz. 149, 161, 726 P.2d 565,

1    577 (1986) (citations omitted).  Punitive damages are not automatically recoverable in

2    every case where the tort of bad faith is established.  *Id.*

3           Punitive damages "are recoverable in bad faith tort actions when, *and only when*,

4    the facts establish that defendant's conduct was aggravated, outrageous, malicious or

5    fraudulent."  *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578 (emphasis is original).  "To

6    recover punitive damages, a plaintiff must prove by clear and convincing evidence that

7    the defendant engaged in aggravated and outrageous conduct with an 'evil mind'"  *Hyatt*

8    *Regency Phoenix Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 132, 907 P.2d 506, 518

9    (App. 1995) (citations omitted).  "A defendant acts with the requisite evil mind when he

10   intends to injure or defraud, or deliberately interferes with the rights of others,

11   'consciously disregarding the unjustifiable substantial risk of significant harm to them.'"

12   *Id.* (citing *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 331, 723 P.2d 675, 680

13   (1986); *Gurule v. Illinois Mut. Life & Cas. Co.*, 152 Ariz. 600, 602, 734 P.2d 85, 87

14   (1987)); *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578.  "Of course, the required evil mind

15   may be established by defendant's express statements or inferred from defendant's

16   expressions, conduct, or objectives."  *Gurule*, 152 Ariz. at 602, 734 P.2d at 87.

17          Thus, "[i]ndifference to facts or failure to investigate are sufficient to establish the

18   tort of bad faith but may not rise to the level required by the punitive damage rule."

19   *Rawlings*, 151 Ariz. at 162, 726 P.2d at 578.  The *Rawlings* court further explained:

20              To obtain tort damages, for instance, plaintiff must prove only
                that defendant failed to ascertain the true facts and thus acted
21              without or indifferent to the reasonable basis required for
                denying the claim.  To obtain punitive damages, plaintiff
22              must also show that the evil hand that unjustifiably damaged
                the objectives sought to be reached by the insurance contract
23              was guided by an evil mind which either consciously sought
                to damage the insured or acted intentionally, knowing that its
24              conduct was likely to cause unjustified, significant damage to
25              the insured.

26

27   *Id.*

28          "The question of whether punitive damages are justified should be left to the jury

- 11 -

1    if there is any reasonable evidence which will support them.  The evidence, however,

2    must be more than slight and inconclusive such as to border on conjecture."  *Farr v.*

3    *Transamerica Occidental Life Ins. Co. of California*, 145 Ariz. 1, 9, 699 P.2d 376, 384

4    (App. 1984).  A motion for summary judgment "on the issue of punitive damages must

5    be denied if a reasonable jury could find the requisite evil mind by clear and convincing

6    evidence."  *Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 171 Ariz. 550, 558,

7    832 P.2d 203, 211 (1992).  "Conversely, the motion should be granted if no reasonable

8    jury could find the requisite evil mind by clear and convincing evidence."  *Id.*

9           Here, the Court finds that Plaintiffs have failed to show sufficient factual evidence

10   in the record that would allow a reasonable jury to award punitive damages.  The Court

11   agrees with Defendant that Plaintiffs have failed to identify evidence showing something

12   more than the conduct necessary to establish the tort of bad faith.  Plaintiffs point to

13   Defendant's failure to consider "a wealth of medical records" before denying Mr.

14   Borden's benefits.  Plaintiffs further contend that Defendant refused to consider Dr.

15   Finley's post-termination letter affirming Mr. Borden's disability; that Defendant,

16   pursuant to company policy, conducted a "threadbare vocational assessment"; and that

17   Defendant "incentivizes claims handlers to put its financial interests first."  (Doc. 135 at

18   17).  Plaintiffs argue that these facts could reasonably lead a jury to award punitive

19   damages.

20          The Court disagrees.  Plaintiffs have not identified specific facts from which they

21   could "prove by clear and convincing evidence that the defendant engaged in aggravated

22   and outrageous conduct with an 'evil mind'" *See Hyatt Regency Phoenix Hotel Co.*, 184

23   Ariz. at 132, 907 P.2d at 518.  Especially when considering that within 30 days of Mr.

24   Borden's appeal, Defendant reversed its decision, reinstated benefits, and promptly paid

25   retroactive benefits, the Court sees no basis upon which a jury could reasonably infer

26   Defendant acted with an evil mind through deliberate conduct intended to harm Plaintiffs.

27   Plaintiffs have not met their burden to show a genuine issue of material fact on their

28   claim for punitive damages.  Defendant's motion for summary judgment on this issue

1    will therefore be granted.

2           **4. Future Benefits**

3           Finally, Defendant seeks summary judgment on Plaintiffs' request for future

4    benefits.   "Under the tort theory of bad faith, future benefits are included as

5    compensatory damages."   *Haldiman v. Continental Cas. Co.*, 2013 WL 3967622, *3

6    (August 2, 2013) (citing *Leavey v. UNUM/Provident Corp.,* CV-02-2281-PHX-SMM,

7    2006 WL 1515999 (D. Ariz. May 26, 2006), *aff'd sub nom. Leavey v. Unum Provident*

8    *Corp.*, 295 F. App'x 255 (9th Cir. 2008); *Greenberg v. Paul Revere Life Insurance Co.*,

9    91 F. App'x 539, 541-42 (9th Cir. 2004)).   Although recognizing that the Arizona

10    Supreme Court has not addressed the question of future benefits, the Ninth Circuit has

11    stated in an unpublished decision that "were the Arizona Supreme Court to address this

12    issue, it would likely hold that future policy benefits may be awarded as compensatory

13    damages."  *Greenberg*, 91 F. App'x at 541.  *Greenberg*, like this case, involved a claim

14    of bad faith termination of disability benefits.  *See id.*

15           Although the above authority is not binding on this Court, the Court agrees with

16    the conclusions reached by two other judges in this district and the unpublished decision

17    of the Ninth Circuit.  In *Leavey*, Judge McNamee denied a similar motion for summary

18    judgment in which the defendants sought to preclude the plaintiff from seeking future

19    benefits as a measure of compensatory damages.  (*See* Doc. 55 of CV 02-2281-PHX-

20    SMM).  Judge McNamee denied the defendants' motion because, among other reasons,

21    they failed to provide "an authoritative basis for ruling as a matter of law."  (*Id.* at 7).

22    The same is true here.  Defendant has not provided the Court with any binding authority

23    that prohibits Plaintiffs from seeking future benefits as part of their compensatory

24    damages.   Under the circumstances of this case, Plaintiffs may be hard-pressed to

25    convince a jury to award future benefits in light of the fact that Mr. Borden's benefits

26    have been reinstated and he continues to receive them.  Regardless, Defendant has not

27    demonstrated as a matter of law that Plaintiffs should be prohibited from seeking future

28    benefits as a measure of compensatory damages.   Defendants request for summary

1  judgement on this issue will be denied.

2          Accordingly,

3          **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 130) is

4  **GRANTED** in part and **DENIED** in part.  The motion is granted as to Plaintiffs' breach

5  of contract and punitive damages claims.  The motion is otherwise denied.

6          **IT IS FURTHER ORDERED** that Plaintiffs' Motion to File Supplemental Brief

7  (Doc. 157) is **DENIED**.

8          **IT IS FINALLY ORDERED** that, by separate order, the Court will set a final

9  pretrial conference and provide instructions for preparing a joint proposed pretrial order,

10  among other items for submission to the Court.

11          **Dated** this 21st day of March, 2017.

12

13                                          _____
                                            Honorable Diane J. Humetewa

14                                          United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28